# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JERRY GARCIA, SR., )
                                                 )
               Plaintiff, )        Civil Action No. 11-113 Erie
                                                 )
      v. )
                                                 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
                                                 )
               Defendant. )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District Judge.

## I.    INTRODUCTION

       Jerry Garcia, Sr. ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* and § 1381 *et seq*. Plaintiff filed his applications on September 26, 2008, alleging disability since April 2, 2008 due to depression and anxiety (AR 111-116; 125).[1] His applications were denied (AR 54-63), and following a hearing held on April 27, 2010 (AR 29-50), the administrative law judge ("ALJ") issued his decision denying benefits to Plaintiff on June 4, 2010 (AR 16-23).

       Plaintiff's request for review by the Appeals Council was subsequently denied (AR 1-8), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the Plaintiff's motion will be denied and the Commissioner's motion will be granted.

---

[1] References to the administrative record [ECF No. 3], will be designated by the citation "(AR ___)".

## II. BACKGROUND

Plaintiff was 36 years old on the date of the ALJ's decision and has a general equivalency diploma (AR 132). He has past work experience as a taxi driver, security guard, laborer and telemarketer (AR 126).

On August 18, 2008, Plaintiff underwent a psychosocial evaluation at Safe Harbor Behavioral Health performed by Katherine Goodiel LSW (AR 202-205). Plaintiff reported a four year history of depression and anxiety, with recent suicidal thoughts that caused him to seek help (AR 202). He relayed a history of aggressive behavior, which included cutting himself and engaging in fights with others (AR 202). Plaintiff stated that he experienced difficulty breathing and his thoughts "raced" (AR 202). He reported hearing "whispering" sounds during the previous six months, and also reported sleep and appetite disturbances, a decreased energy level, attention and concentration difficulties, and a depressed mood (AR 202). In addition, he stated that his alcohol usage had increased (AR 202). His medications consisted of Paxil and Xanex prescribed by his primary care physician, but he claimed they were ineffectual in combating his symptoms (AR 202).

On mental status examination, Ms. Goodiel found Plaintiff was fully oriented, cooperative, exhibited adequate eye contact, displayed adequate hygiene and was appropriately dressed (AR 205). His speech was slow and underproductive, his thought processes were organized and relevant, but he demonstrated low self-esteem and hopelessness for the future (AR 205). Ms. Goodiel also found Plaintiff exhibited an anxious, sad and flat affect, and his judgment and insight were poor (AR 205). He was diagnosed with major depressive disorder, recurrent episode; alcohol abuse; and rule out borderline personality disorder (AR 205). She assigned Plaintiff a global assessment of functioning[2] ("GAF") score of 45 and recommended he undergo a psychiatric evaluation (AR 205).

---

[2]The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 41 to 50 may have "[s]erious symptoms (e.g., suicidal ideation

Plaintiff was psychiatrically evaluated by Liberty Eberly, D.O. on August 20, 2008 (AR 207-209). On mental status examination, Dr. Eberly found Plaintiff was fully oriented, friendly, and cooperative (AR 208). He displayed good grooming and hygiene (AR 208). Plaintiff admitted to some mild suspiciousness but did not exhibit any paranoid delusions (AR 208). He denied suffering from visual hallucinations but reported auditory hallucinations (AR 208). His cognition and memory were unimpaired (AR 208). Dr. Eberly found him to be depressed and anxious, but also concluded that he had "fair" judgment and insight (AR 208). Plaintiff was diagnosed with major depressive disorder with psychotic features; generalized anxiety disorder; and alcohol abuse, and was assigned a GAF score of 49 (AR 208). Dr. Eberly increased Plaintiff's Paxil dosage for his symptoms of depression and anxiety, decreased his Xanax dosage, and prescribed Seroquel for his symptoms of anxiety, irritability and hallucinations (AR 208). She further recommended that he cut back on his alcohol usage and contact a therapist (AR 208).

Plaintiff returned to Dr. Eberly on September 9, 2008 and reported that he continued to experience hallucinations and felt depressed (AR 215). Dr. Eberly, once again, found Plaintiff to be cooperative and friendly (AR 215). Plaintiff had fleeting suicidal thoughts but no suicidal intention (AR 215). Dr. Eberly assigned him a GAF score of 49, and added Risperdal to his medication regimen (AR 216).

On October 24, 2008, Plaintiff continued to complain of depression, anxiety, panic attacks and auditory hallucinations when angry (AR 214). Plaintiff stated that he had trouble leaving his house and isolated himself in his room (AR 214). He declined to attend Alcoholics Anonymous meetings "due to anxiety" (AR 214). While he remained friendly and cooperative with appropriate eye contact and grooming, Dr. Eberly noted that he was "very anxious" (AR 214). He was assigned a GAF score of 45 (AR 214).

---

....)" OR "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

On November 24, 2008, Michelle Santilli, Psy.D., a state agency reviewing psychologist, reviewed the psychiatric evidence of record and determined that Plaintiff had mild limitations in completing activities of daily living and moderate difficulties in maintaining concentration, persistence or pace, and moderate difficulties in maintaining social functioning (AR 231). Dr. Santilli completed a mental residual functional capacity assessment form, and opined that Plaintiff was not significantly limited in his ability to ask simple questions, request assistance, avoid normal hazards, travel and use public transportation, or set realistic goals (AR 219). She found Plaintiff was markedly limited, however, in his ability to understand, remember, and carry out detailed instructions (AR 218). She further found that Plaintiff was only moderately limited in all other work-related areas (AR 218-219).

Dr. Santilli found that Plaintiff's basic memory processes were intact (AR 220). She opined that he could perform simple, routine, repetitive work in a stable environment (AR 220). She found he was able to understand, retain and follow simple job instructions and make simple decisions (AR 220). Dr. Santilli noted that Plaintiff's activities of daily living and social skills were functional, and he could sustain an ordinary routine without special supervision (AR 220). Finally, Dr. Santilli concluded that Plaintiff had some limitations in dealing with work stresses and public contact, but that he remained capable of meeting the basic mental demands of competitive work on a sustained basis (AR 220).

On December 29, 2008, Plaintiff returned to Dr. Eberly with complaints that his anxiety had worsened and that he had suffered two panic attacks the previous week (AR 310). He also reported visual hallucinations occurring several times per week (AR 310). Although he expressed suicidal thoughts, he indicated he had no plan to carry them out (AR 310). Dr. Eberly found, as in previous visits, that Plaintiff was friendly and cooperative, but depressed and anxious (AR 310). She continued to diagnose him with major depressive disorder, recurrent episode, severe; generalized anxiety disorder; and nondependent alcohol abuse (AR 310). He was assigned a GAF score of 45 (AR 310). His Effexor dosage was increased and Risperdal was restarted for his hallucinations (AR 311).

Plaintiff was evaluated by Paul Shields, D.O. on December 29, 2008 (AR 239-244). Plaintiff stated an inability to work due to depression and anxiety (AR 239). He reported feelings of stress, difficulty concentrating and sadness, but denied any suicidal or homicidal thoughts (AR 239). On mental status examination, Dr. Shields reported his "affect/demeanor" as "anxious, depressed [and] flat" (AR 240). Plaintiff was diagnosed with generalized anxiety disorder and major depression (AR 240).

Plaintiff also received treatment at Great Lakes Family Medicine from February 2009 through July 2009 from James Jageman, M.D. (AR 251-308). On February 25, 2009, Plaintiff was seen for a general check-up and was assessed with, *inter alia*, depression with anxiety (AR 252). Dr. Jageman reported Plaintiff's mood as normal at this visit (AR 254).

When seen by Dr. Eberly on February 23, 2009, Plaintiff reported suffering from three panic attacks in the prior week (AR 312). He continued to complain of anxiety, depression and hallucinations (AR 312). Plaintiff had switched from individual therapy to group therapy, which he found helpful (AR 312). Her diagnosis was similar to that of December 29, 2008, with the exception that she added "panic disorder without agoraphobia" (AR 312). She also assigned him a GAF score of 49 (AR 312).

On April 8, 2009, Plaintiff reported that he had "good days and bad days," but he continued to suffer from auditory and visual hallucinations (AR 313). Plaintiff claimed he heard voices more frequently, telling him to kill himself (AR 313). He felt that others were "whispering" about him, and believed his brother was "looking for ways to hurt [him]" (AR 313). His anxiety symptoms had decreased with the increase in his medications, and he had only one panic attack the week prior (AR 313). His group therapy had ended and he was returning to individual therapy (AR 313). His diagnosis remained unchanged and he was assigned a GAF score of 40[3] (AR 313-314).

---

[3]An individual with a GAF score of 31 to 40 may have "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; …)" *Id.*

5

On May 15, 2009, Plaintiff returned to Dr. Eberly and reported that one week prior he had been "happy for some reason" and "very talkative" (AR 315). A few days later, he reported that he began "crying for no reason" (AR 315). He continued to complain of auditory and visual hallucinations (AR 315). Dr. Eberly added a diagnosis of bipolar disorder, single manic episode, mild, and assigned him a GAF score of 40 (AR 315).

On May 30, 2009, Plaintiff was treated in the emergency room for a panic attack (AR 272). He complained of heart palpitations and shortness of breath (AR 274). His symptoms improved with Ativan and he was subsequently discharged (AR 273).

Plaintiff returned to Dr. Eberly on June 3, 2009 with continuing complaints of anxiety (AR 317). He denied any manic symptoms (AR 317). His diagnosis remained unchanged and he was assessed with a GAF score of 45 (AR 318). On June 11, 2009, Plaintiff reported to Dr. Jageman that Ativan had not helped his symptoms, but Effexor had been effective in the past (AR 260). Dr. Jageman assessed him with depression, anxiety, and panic disorder without agoraphobia (AR 262).

On July 13, 2009, Plaintiff reported an improvement in his symptoms when seen by Dr. Eberly (AR 319). He stated that he had been going to the gym, lost weight, was walking, and had increased energy (AR 319). He reported that he continued to have panic attacks but denied any manic symptoms or hallucinations (AR 319). He described his mood as more "even" and felt he was not as angry or depressed (AR 319). Dr. Eberly found Plaintiff to be "much less depressed" (AR 319). He was diagnosed with bipolar disorder, single manic episode; panic disorder without agoraphobia; and nondependent alcohol abuse, and was assigned a GAF score of 50 (AR 319).

On October 26, 2009, Plaintiff reported to Dr. Eberly that his hallucinations had returned and worsened (AR 321). Her diagnosis at that time was generalized anxiety disorder and nondependent alcohol abuse, and he was assigned a GAF score of 48 (AR 321-322).

When seen by Dr. Eberly on December 3, 2009, Plaintiff reported that he was "not so well" (AR 323). He claimed that his hallucinations continued to worsen (AR 323). He described

his mood as "aggressive and frustrated" and complained of sleep difficulties (AR 323). He was assigned a GAF score of 45 (AR 324).

Plaintiff returned to Dr. Eberly on December 9, 2009 and reported that while the "voices" were still present they no longer awakened him at night (AR 325). She found Plaintiff appeared "more hopeful" and "less desperate" compared to the prior week (AR 325). He denied having any suicidal thoughts (AR 325). His diagnosis remained the same and he was assigned a GAF score of 46 (AR 325-326).

Finally, on January 15, 2010, Plaintiff reported that he was feeling better, was able to sleep 10 hours at night, and was less irritable (AR 327). Plaintiff described a one-day manic episode that had occurred the prior week, followed by two days of sadness (AR 327). Plaintiff ran out of Depakote and wanted to be maintained on Zyprexa alone (AR 327). Dr. Eberly found Plaintiff "look[ed] pretty good" and was less depressed (AR 327). While hallucinations were still occurring they had decreased, and he denied any suicidal thoughts (AR 327). His diagnosis remained unchanged, and he was assessed with a GAF score of 49 (AR 328).

Plaintiff and George Starosta, a vocational expert, testified at the hearing held by the ALJ on April 27, 2010 (AR 29-50). Plaintiff testified that he had not worked since April 2, 2008 (AR 35). Plaintiff stated that he was no longer seeing a therapist because his insurance did not cover the cost (AR 36-37). He stated he was compliant with his medication regimen and no longer drank alcohol (AR 36-37). He indicated that his medication helped control his symptoms, but he continued to experience depression, hallucinations and panic attacks (AR 37; 41). He claimed he suffered from panic attacks three times per week, lasting for an hour (AR 38-39). Plaintiff further claimed he continued to suffer from audio and visual hallucinations (AR 41). Plaintiff testified that he stayed in his room at his brother's house most of the time, read and watched television, and helped with chores (AR 40).

The ALJ asked the vocational expert to assume an individual of the same age, education and work experience as the Plaintiff, who had no exertional limitations, but was limited to simple and repetitive tasks involving routine work processes and settings not involving high stress (defined as work involving high quotas or close attention to quality production standards) (AR

7

46). Such individual was further unable to engage in teamwork or team-type activities and would not be able to engage in more than incidental interaction with the public (AR 46). The vocational expert testified that such an individual could perform the medium positions of an industrial cleaner, dishwasher and stocker (AR 47).

Following the hearing, the ALJ issued his decision denying benefits to the Plaintiff (AR 16-23) and his request for review by the Appeals Council was denied (AR 1-8) rendering the Commissioner's decision final under 42 U.S.C. § 405(g). He subsequently filed this action.

### III.    STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 1097, 229 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

## IV. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) with 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that the Plaintiff met the disability insured status requirements of the Act through March 31, 2010 (AR 18). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition. *See* 20 C.F.R. §§ 404.1520; 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able

to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Here, the ALJ concluded that Plaintiff's major depression, anxiety and panic disorder were severe impairments, but determined at step three that he did not meet a listing (AR 18-20). The ALJ found the Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: he was limited to simple, routine, repetitive work processes and settings not involving high stress, (defined as high production quotas or close attention to quality production standards), and jobs not involving teamwork or more than incidental interaction with the public (AR 20). At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 22-23). The ALJ also determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible (AR 21). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Initially, we must determine whether additional medical evidence attached to the Plaintiff's Brief should be considered by the Court in our review. This evidence consists of Dr. Eberly's treatment records dated from February 8, 2010 through April 20, 2011. [ECF No. 6-1] pp. 1-23. Pursuant to *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001), we cannot consider these records in our substantial evidence review of the ALJ's decision. In order to obtain a remand, the claimant must satisfy three requirements. *Id*. at 594. First, new evidence must be "new," in the sense that it is not cumulative of pre-existing evidence on the record. *Szubak v. Sec. of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). Second, new evidence must also be "material," in that it is relevant to the time period and impairments under consideration, it is probative, and it is reasonably possible that such evidence would have changed the ALJ's decision if presented earlier. *Id*. Third, "good cause" must be shown for not submitting the evidence at an earlier time. *Id*. The court demands these three showings be made to avoid

inviting claimants to withhold evidence in order to obtain another "bite of the apple" when the Commissioner denies benefits. *Matthews,* 239 F.3d at 595 (citing *Szubak*, 745 F.2d at 834).[4]

As pointed out by the Commissioner, with respect to the treatment records dated February 8, 2010 and March 19, 2010, this evidence is neither new nor material, and is merely cumulative of the evidence that was before the ALJ. These records reflect that Plaintiff continued to complain of frequent panic attacks, sleep problems, and self-isolating behavior. [ECF No. 6-1] pp. 1-4. Plaintiff similarly continued to be reported as friendly and cooperative on mental status examination, and his mood was reported as "depressed" on February 8, 2010 and "very depressed" on March 19, 2010. [ECF No. 6-1] pp. 1; 3. Dr. Eberly's diagnosis of the Plaintiff, as well as his GAF score, remained unchanged from the last treatment note entry dated January 15, 2010 (AR 328). Moreover, Plaintiff has failed to demonstrate good cause for not presenting this evidence to the ALJ for consideration.

With respect to the Safe Harbor treatment note entries of Dr. Eberly dated July 2, 2010 through April 20, 2011 [ECF No. 6-1] pp. 5-20, although these records are "new" in the sense that they were not generated until after the decision of the ALJ dated June 4, 2010, they are immaterial since they do not relate to the time period for which benefits were denied. *See e.g., Harkins v. Astrue*, 2011 WL 778403 at *1 n.1 (W.D.Pa. 2011) (holding that a new evidence remand was not warranted where records dated one month after ALJ's decision did not expressly relate back to relevant period); *Range v. Astrue*, 2009 WL 3448746 at *8 (W.D.Pa. 2009) (records that post-date the ALJ's decision are immaterial since they do not relate to the time period for which benefits were denied); *Anderson v. Comm'r of Soc. Sec.*, 2008 WL 619209 at *12 (D.N.J. 2008) (claimant not entitled to remand where records were dated after ALJ's decision). We conclude that Plaintiff has failed to demonstrate a new evidence remand is warranted with respect to either group of records. Consequently, we direct our attention to Plaintiff's substantive arguments.

---

[4] Although Plaintiff has not specifically requested a remand for the purpose of the ALJ considering these medical records, we conclude that he has at least implicitly done so by submitting them to the Court for our consideration.

11

Plaintiff first contends that the ALJ erred in concluding that his impairments did not meet the Listings for depression and anxiety at step three of the sequential process. At step three, the ALJ is required to determine whether the claimant has an impairment or combination of impairments that meets or equals a listed impairment in Appendix 1, 20 C.F.R. § 416.920(d). A claimant who meets or medically equals all of the criteria of an impairment listed in Appendix 1 is *per se* disabled and no further analysis is necessary. *Burnett v. Comm'r*, 220 F.3d 112, 119 (3d Cir. 2000). A claimant bears the burden of establishing that his impairments meet or equal a listed impairment. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).

The ALJ evaluated the Plaintiff's mental impairments under § 12.04 affective disorders, and § 12.06, anxiety related disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06. Plaintiff only takes issue with the ALJ's findings relative to the paragraph B criteria of the Listings, which require at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04B, 12.06B. "Marked" is described in the regulations as "more than moderate but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C.

The ALJ found that Plaintiff's mental impairments did not meet the criteria of Listing 12.04 or 12.06 because he had only moderate limitations in his activities of daily living, social functioning, and concentration, persistence, and pace, and had no more than one or two episodes of decompensation (AR 19). The ALJ observed that although the Plaintiff testified he stayed in his room much of the time, he was nonetheless able to leave his home regularly for medical appointments, maintain adequate hygiene and grooming, and read and watch television (AR 19). The ALJ further observed that although there was some indication of social isolation, Plaintiff was able to maintain satisfactory relationships with his brother and others, and that health care professionals at Safe Harbor consistently revealed the Plaintiff to be friendly and cooperative (AR 19). The ALJ noted that while Plaintiff had some difficulty with hallucinatory symptoms, there was no indication that these significantly intruded on his thought process or otherwise

impaired his concentration (AR 19). The ALJ observed that the Safe Harbor records showed no signs of serious impairment in his concentration, attention or memory (AR 19). The ALJ further observed the Dr. Jageman's records also showed no deficits in these areas (AR 19). Finally, the ALJ found no evidence of inpatient treatment, noting there was only one emergency room treatment for a panic episode (AR 19). All of the ALJ's findings in this regard are supported by substantial evidence and we find no error in the ALJ's step three determination.

The Court likewise rejects the Plaintiff's argument that the ALJ failed to assign "appropriate weight" to the Safe Harbor treatment records in assessing his residual functional capacity ("RFC").[5] [ECF No. 6] p. 11. It is now well established law in this Circuit that, in evaluating a claim for benefits, the ALJ must consider all the evidence in the case. *Plummer v. Apfel*, 186 F.3d 422, 429 (3rd Cir. 1999). The Third Circuit has also directed that "[w]here competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence," *Dobrowolsky v. Califano*, 606 F.2 403, 407 (3rd Cir. 1979), and "adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Sykes v. Apfel*, 228 F.3d 259, 266 (3rd Cir. 2000). Without this type of explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705-07 (3rd Cir. 1981); *see also Plummer*, 186 F.3d at 429 (ALJ must give some reason for discounting the evidence he rejects).

The ALJ complied with his responsibilities under *Cotter*. In his decision, the ALJ stated the following with respect to these records:

> … [Claimant] has a history of problems with depression, anxiety, and panic which have led to some social isolation and reduced functioning. Nonetheless, I am not convinced that his mental impairments in combination would preclude the performance of a wide range of simple, routine, low stress work. The claimant has undergone several medication adjustments, but in general the reports from Safe Harbor facility (Exhibits 2F and 9F) tend to show a gradual improvement in

---

[5] "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2). In making this determination, the ALJ must consider all the evidence before him. *Burnett*, 220 F.3d at 121.

13

> the claimant's depression, anxiety, and panic episodes. In general, these reports tend to show that despite the claimant's hallucinations, he has no serious impairment in his thought processes, concentration, or attention. The treatment notes consistently indicate that the claimant is friendly and cooperative with respect to treatment, and that he also consistently maintains good hygiene and grooming. Furthermore, the reports from Dr. Jageman (Exhibit 8F) also show that the claimant was exhibiting no problems with memory loss or concentration during various office visits from February through July 2009. The claimant continues to require conservative medical management including medications and counseling, and the record contains one reference to emergency room treatment for an acute exacerbation of his panic symptoms. Otherwise, the claimant has not been an inpatient nor has he received other aggressive treatment for frequent deterioration in his mental health conditions.

(AR 21).

We also find that the ALJ's RFC assessment is supported by substantial evidence. As the ALJ observed, Plaintiff's symptoms improved with medication. On April 8, 2009, it was noted that Plaintiff's anxiety symptoms had decreased with medication and Dr. Eberly found him less anxious (AR 313). On July 13, 2009, Plaintiff reported an improvement in his depressive symptoms (AR 319). Plaintiff reported that he was going to the gym, walking, and had more energy (AR 319). Dr. Eberly reported that his mood was "much less depressed," he had no hallucinations while on Lithium, and had no thoughts of suicide (AR 319). On December 9, 2009, Plaintiff reported that medications helped his symptoms, and Dr. Eberly found that he "appear[ed] more hopeful," "less desperate," and was "slightly brighter" (AR 325). By January 15, 2010, Plaintiff reported a decrease in his hallucinatory symptoms, and stated that his mood was more stable (AR 327). Dr. Eberly found on mental status examination that he was less depressed (AR 327). The ALJ also found that Plaintiff's hallucinatory symptoms caused no serious impairment in his thought processes, concentration or attention (AR 21). While Plaintiff contends otherwise, the Safe Harbor records reveal that his thought processes were organized, relevant and coherent, and his cognition and memory were unimpaired (AR 205; 208). Moreover, Dr. Jageman's records reveal no memory loss or concentration issues (AR 251-308).

Finally, the ALJ found that his RFC assessment was consistent with the state agency reviewing psychologist, who reviewed the medical evidence of record and concluded that

Plaintiff could understand, retain and follow simple job instructions and make simple decisions (AR 22; 220). He also found that while Plaintiff was somewhat limited in dealing with work stresses and public contact, he could perform the basic mental demands of competitive work (AR 22; 220). It is well settled that under the regulations state agency psychological consultants are "highly qualified … psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i); 416.927(f)(2)(i). Accordingly, the ALJ was entitled to rely upon Dr. Santilli's opinion in evaluating Plaintiff's RFC. In sum, we find that the ALJ adequately considered the medical evidence in assessing the Plaintiff's RFC and incorporated into his finding all of the limitations that were substantially supported by the medical evidence and other relevant evidence.

Plaintiff next argues that the ALJ's hypothetical question failed to adequately depict his functional limitations. [ECF No. 6] p. 12. We disagree. Testimony of a vocational expert concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the hypothetical question accurately portrays the claimant's individual physical and/or mental impairments. *See Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984). An ALJ is therefore only required to accept such testimony if such limitations are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987). Plaintiff does not identify any particular "limitation" that the ALJ failed to include in his hypothetical to the vocational expert, nor did his attorney propound any additional limitations to the expert at the administrative hearing (AR 48). In any event, the ALJ accommodated the Plaintiff's moderate limitations in social functioning by restricting him to jobs not involving teamwork or more than incidental interaction with the public, and accommodated his moderate limitations in concentration, persistence and pace by limiting him to jobs involving simple, routine, repetitive work processes and settings not involving high stress (AR 45-47).

## V. CONCLUSION

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERRY GARCIA, SR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-113 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

AND NOW, this 5th day of June, 2012, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [ECF. No. 5] is DENIED, and the Defendant's Motion for Summary Judgment [ECF No. 7] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Jerry Garcia, Sr.

The clerk is directed to mark the case closed.

                                            s/ Sean J. McLaughlin
                                               United States District Judge

cm:    All parties of record